THE STATE OF MISSOURI ex rel. H. B. SANBORN, Appellant, v. HENRY M. STONESTREET et al., Respondents.

**Kansas City Court of Appeals, February 10, 1902.**

1. **Limitations: ACCRUING OF ACTION: ISSUING FEE BILL.** Where a clerk wrongfully issues a fee bill against a party, it is a wrong directed at the individual and completes a cause of action when done, and the three-year statute of limitations at once begins to run. Cases considered and distinguished.

2. **Payment: DURESS: THREATENED DANGER.** Courts will not order the refunding of money voluntarily paid with knowledge of the facts; and the duress of property which will authorize the refunding of a payment is a seizure or a threat to seize with the present purpose of immediate execution; and the evidence in this record fails to show such duress.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

AFFIRMED.

State ex rel. v. Stonestreet.

*Muckle & Hayward* for plaintiff.

(1) The statute began to run from the time Sanborn sustained substantial damages, that is from the time he paid the money out on the fee-bills, not from the date of the issuance of the bills. State ex rel. v. Tillman, 134 Mo. 162; Lesem v. Neal, 53 Mo. 412; 12 Am. and Eng. Ency. of Law (2 Ed.), p. 77; Clyma v. Kennedy, 4 Conn. 310; Place v. Taylor, 22 Oh. St. 317; Newton v. Locklin, 77 Ill. 203; Linesdall v. Combs, 33 Oh. St. 317; Atwell v. Teluff, 26 Mich. 118; Mygatt v. Washburn, 15 N. Y. 316; Westfall v. Preston, 49 N. Y. 349; Ware v. Percival, 61 Maine 391; Ingle v. Bosworth, 5 Pick. 502; Cooley on Torts, 467, 468; 25 Am. and Eng. Ency. of Law, 238, and notes. (2) Statutes relating to costs are strictly construed against the officer. State ex rel. v. McCracken, 60 Mo. App. 650. (3) The payments were enforced by compulsory process and were compulsory, not voluntary payments, and plaintiff's measure of damages is the amounts he was so compelled to pay, with interest thereon. Cooley on Torts (2 Ed.), 814; Douglas v. Kansas City, 147 Mo. 434; Wolfe v. Marshall, 52 Mo. 171; Westlake v. St. Louis, 77 Mo. 47; Maquire v. Savings Ass'n, 62 Mo. 344; Railroad v. Stiner, 61 Ala. 559; Heiserman Case; 63 Iowa 732; Atwell v. Zeluff, 26 Mich. 118; Swift Co. v. U. S., 111 U. S. 22; Latterade v. Kaiser, 15 La. Ann. 296; Robinson v. Burlington, 50 Iowa 240; Meek v. McClure, 49 Cal. 624; Bank v. Sturgis, 21 Mich. 483; Ripley v. Gelston, 9 Johns. 201.

*A. F. Smith* and *Karnes, New, Hall & Krauthoff* for respondents.

(1) This action, so far as it relates to the first fee-bill, i. e., the one dated February 25, 1897, was barred by the statute of limitations when it was instituted. Sec. 4271, R.

S. 1899; Sec. 4274, R. S. 1899; Sec. 8850, R. S. 1899; Tapley
v. McPike, 50 Mo. 589; Northrop·v. Hill, 57 N. Y. 351; Yowe
v. Murphy, 45 Pac. 217; Buswell on Lim., sec. 27; Wilcox v.
Plummer, 4 Pet. 172; Amy v. Dubuque, 98 U. S. 470, 474;
Schade v. Gehner, 133 Mo. 252; Perkins v. Hart, 11 Wheat.
230, 250; Ins. Co. v. Schneider, 29 N. E. 1071, 1072; Single-
ton v. Lewis, Hardin (Ky.), 258; Briggs v. Brushafer, 43 Mich.
330; Whittier v. Collins, 23 At. 57; Wood on Lim., 362; Penn.
Co. v. Railroad, 44 Ill. App. 132; Rankin v. Schaeffer, 4 Mo.
App. 108; Moore v. Invecial, 92 Pa. St. 490; Lilly v. Boyd,
72 Ga. 83; Wilcox v. Executors of Kemp, 4 Pet. 172; Bus-
well on Lim., sec. 209; Betts v. Norris, 21 Maine 314; Earlin
v. Strickland, 27 Maine 443; Miller v. Adams, 16 Mass. 456;
Newell v. Wigham, 102 N. Y. 20; Fisher v. Pond, 1 Hill
672; Buswell on Lim., sec. 214; Mather v. Green, 17 Mass.
60; Cochran v. Welby, 2 Wood 212; Fwench v. O'Neale, 2
H. & McHen. (Mod.) 401; West v. Rise, 9 Met. 564; Foley
v. Jones, 52 Mo. 64, 67.    (2)   No recovery can be had by
plaintiff on account of payment of first fee-bill (a) because
said payment was voluntary, (b) because plaintiff paid nothing
but what he owed, (c) because thereafter defendants, in attach-
ment suit, induced by said payment, waived all right of action
on attachment bond.    Redmond v. Mayor, etc., 26 N. E. 728;
The Sonomer Co. Tax Case, 13 Fed. 789; Lick v. Madden, 36
Cal. 208; Bobb v. Dillon, 20 Mo. App. 312; Teasdale v. Stol-
ler, 133 Mo. 651; County of Hawkins, 2 So. 365, 23 Fla. 220;
Baldwin v. Foss, 32 N. W. 389, 71 Iowa 389; Weaver v. Stacy,
62 N. W. 22, 93 Iowa 683; Redmond v. Mayor, etc., 26 N.
E. 728, 125 N. Y. 632; Robins v. Latham, 134 Mo. 473;
Douglas v. Kansas City, 147 Mo. 439; Phelps v. New York,
19 N. E. 408, 112 N. Y. 216; Maxwell v. County, etc., 12
Pac. 484, H. Cal. 466; The Sonomer Tax Case, 13 Fed. 789.
(3)   Payment of second fee-bill was clearly voluntary.

ELLISON, J.—The defendant, Stonestreet, is clerk of the circuit court of Jackson county, and the other defendants are his sureties on his official bond. The petition charges him, in the first count thereof, with a breach of the bond in that he wrongfully issued a fee-bill against relator wherein he certified that relator was liable for the fees charged therein, when in truth he was not, and that in obedience to the command of said bill, the sheriff of said county compelled the relator to pay it by demanding the amount thereof and threatening to levy on his property. The bill was issued on the twenty-fifth day of February, 1897, and payment was made by relator on March 29 thereafter.

The second count charges him with wrongfully issuing another fee-bill on November 22, 1898, and delivering it to the sheriff on December 14, 1898, and that he was compelled to pay the amount thereof, on May 9, 1899, by reason of the demand of the sheriff and his threats to levy upon his property.

The action was brought on March 23, 1900. The statute of limitations is relied upon as a bar to the first fee-bill. The statute (sec. 4271, R. S. 1899) provides: "Civil actions, other than for the recovery of real property, can only be commenced within periods prescribed in the following sections after the causes of action shall have accrued:

"Sec. 4274. Within three years: First, an action against a sheriff, coroner or other officer, upon a liability incurred by the doing of an act in his official capacity, and in virtue of his office, or by the omission of an official duty . . ."

It will be observed that the action was brought a few days more than three years after the defendant issued the first fee-bill and a few weeks less than three years from the time relator paid it. The question is, did the statute begin to run at the date the clerk issued the bill, or at the date relator paid it. The answer is to be had by ascertaining when the cause of action accrued, for the statute aforesaid commands that

suit shall be brought within three years thereafter. Leaving out of view cases founded on breach of contract, there is yet a class of cases which hold that where the damages themselves constitute the cause of action and not the mere measure of redress, the statute only begins to run from the time such damage is inflicted. Where there is no cause of action in the plaintiff until the damage happens, then the statute will only begin to run from the date of the damage. But where an officer commits a wrongful act directly against an individual, it seems to us clear that a cause of action then instantly exists for the wrong, notwithstanding *all of the injury* has not yet followed. The cause of action is at once complete when *the act directed at the individual is committed.* The subsequent damage which may follow is but additional measure of the injury. The authorities on the question of when a cause of action arises so as to set in motion the statute of limitations are not to be reconciled, as can be readily realized from the majority and minority opinions in the cases of Betts v. Norris, 21 Maine 314, and Bank v. Waterman, 26 Conn. 324. In this State we have Schade v. Gehner, 133 Mo. 252 and Rankin v. Schaeffer, 4 Mo. App. 108, wherein it is held that where an abstractor of titles makes an incorrect or false abstract, the statute begins to run from the time of the delivery of the abstract as that was the breach of duty, notwithstanding it was not then known to be false and that damage did not flow therefrom until afterwards. On the other hand, it was held in State ex rel. v. Tittmann, 134 Mo. 162, that the statute did not begin to run at the date of the wrongful breach of a curator's bond, but at the time when subsequent damages resulted therefrom. Such cases as that last cited must necessarily rest upon the idea that the breach of the contract is not the cause of action, but that the damages constitute the cause of action and not the mere measurement of the extent of the damages.

Where an officer's wrongful conduct is not a mere general

violation of official duty, but, as before stated, is a wrong directed at an individual, the wrong as such is complete when committed and completes a cause of action, the subsequent damage being consequences in no way aiding the cause of action itself, though aggravating and measuring the injury. Thus, if an officer makes an unlawful levy of a writ of execution on property, the owner has instantly a cause of action without waiting for consequential damages to ensue. The wrongful levy is the cause of action, and consequences flowing therefrom measure its extent.

In this case the clerk is charged with malfeasance in the unlawful and wrongful issue of a fee-bill wherein certain costs were certified against relator and the sheriff of the court directed to seize his property. The wrong was aimed directly at him and it was complete as a cause of action when committed, that is, when issued. We therefore hold the first fee-bill to be barred by the statute aforesaid.

The second bill, though not barred, is said by defendant to have been voluntarily paid by relator and, therefore, for that reason, can not be recovered back. It is to be gathered from relator's testimony in his own behalf that a deputy sheriff called on him about December 14, 1898, with the fee-bill and demanded payment. That, (using relator's language) "I thought the bill excessive and did not pay. The officer called several times and gave me to understand that if it was not paid he would be compelled to force its collection; that he would have to cause me trouble if I didn't pay it. I knew that meant a levy would be made unless it was paid. I felt that I ought not to pay it, and he seemed to think so too, and for that reason it was put off from time to time." Relator wanted time to investigate the matter and the officer gave him time. He consulted with an attorney and on the attorney's advice he finally, on May 9, 1899, paid the amount at the sheriff's office to another deputy, being a period of nearly five months from the time the officer first demanded payment.

There was no pretense of any abuse of process, or wrongful conduct on the part of the officer, further than his having and demanding payment for the costs named in the bill then in his hands for collection.

It is a familiar principle that the courts will not entertain the complaint of a man to recover money back which he, with knowledge of the facts, has voluntarily paid out. Teasdale v. Stoller, 133 Mo. 651; Jefferson County v. Hawkins, 23 Florida 231; Baldwin v. Foss, 71 Iowa 389; Redmond v. Mayor, 125 N. Y. 632. But if he has paid either under duress of person or property (that is by seizure, or threat of immediate seizure of his body or his effects) it is equally well settled that he may force the refunding of his money by an action therefor. What is to be considered duress of property is not always easily determined. If the party paying is acquainted with the facts, and no fraud or abuse of process is practiced upon him, his mistake of law as to the legality of the claim, will not aid him, nor affect the character of a payment otherwise voluntary. Phelps v. New York, 112 N. Y. 216; Gould v. McFall, 118 Pa. St. 455. There must be a seizure of his person or property, or a fear through threat of those having the power to execute the threat, that one or the other, or both, will be seized unless payment is made. Robins v. Latham, 134 Mo. 466. The idea is that a person has presented to him the alternative of either paying the money, or suffering the inconvenience of an immediate seizure of his person or property. The Supreme Court of New York went so far as to state that to become duress of property, its present retention by the owner was "so needful and desirable, as that an action or proceedings at law to recover it will not at all answer the pressing purpose." Peyser v. Mayor, 70 N. Y. 497.

However that may be, we think it clear that the threat to seize the property must, at least, indicate some present purpose to execute it, so that the owner has left to him no other

reasonable alternative to prevent it save payment. It is evidently in recognition of this that the authorities use the words, "threat of *immediate* seizure." In this respect see Douglas v. Kansas City, 147 Mo. 428, where Judge Williams makes prominent that the seizure is to be immediate.

Now what reason is there, on relator's own testimony, for the assertion that he was put in fear of the immediate seizure of his property? He had no fear of precipitate action. He was given every opportunity to stop the collection by the modes which the law vouchsafes to him who has official demand made of him for the payment of an unlawful claim. Indeed he had five months in which to form his conclusion, and after advising with counsel he concluded to pay, and did actually pay, at his leisure. We are satisfied the case lacks essential requisites to duress of property, and, hence, rule the payment was voluntary, and, therefore, affirm the view taken by the trial court in its peremptory instruction for defendant. All concur.