**Louis D. THORNE, Plaintiff,**

v.

**L. Gayle JOHNSON, Defendant, and Third-Party Plaintiff, Appellant,**

and

**Production Credit Association and The Mutual Benefit Life Insurance Company, Defendants.**

**JOHNSON LAND AND DEVELOPMENT COMPANY, Defendant and Third-Party Plaintiff, Appellant,**

v.

**Vera H. JOHNSON (Deceased), et al., Third-Party Defendants, Appellants,**

and

**Douglass-Stewart Abstract & Investment Company, Third-Party Defendant, Respondent.**

No. 25655.

Missouri Court of Appeals, Kansas City District.

June 5, 1972.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1972.

Application to Transfer Denied Sept. 11, 1972.

Max W. Lilley, Lilley & Cowan, Springfield, for defendant and third party plaintiff, appellant Johnson Land and Development Co.

Thaine Q. Blumer, Kansas City, for Frank F. Hamer, Oda Evelyn Hamer, John N. Bond, Hazel M. Bond and Kirk Bond, third-party defendants, appellants.

Donald W. Johnson, Richard A. Erickson, Erickson, Ewing, Smalley, Elliott, Boyle & Records, Kansas City, for L. Gayle Johnson, defendant and third-party plaintiff appellant.

Don Chapman, Jr., Chapman & Chapman, Chillicothe, for respondent.

WASSERSTROM, Judge.

The sole issue presented on this consolidated appeal is whether the causes of action pleaded against Douglass-Stewart Abstract & Investment Company (hereinafter referred to as "the Abstract Company") are barred by limitations. The decision from which the appeals herein are taken was the sustaining of a motion by the Abstract Company for judgment on the plead-

ings. Consequently, the facts pleaded by the appellants must be taken as true. Although the issue presented is narrow, the situation involved is somewhat complicated.

Prior to March 27, 1957, Mr. and Mrs. L. Gayle Johnson were owners in fee simple of the land in question. On the date stated, the Johnsons executed and delivered to plaintiff Thorne deed to a one-half interest in that land. Allegedly, Mr. Johnson (hereinafter referred to as "Johnson") and Thorne were partners with respect to this property, and it is alleged that Johnson was authorized to sell and convey the property on behalf of both himself and Thorne. Johnson states additionally in his brief, although this fact is not pleaded, that there was an agreement between these parties that the deed to Thorne was not to be recorded.

Whatever the case concerning the relationship and agreements between Thorne and Johnson, the fact is that Thorne did record his deed on April 4, 1957. Thereafter, the Johnsons contracted to sell the property to Frank F. Hamer, Oda Hamer, John N. Bond, Hazel M. Bond and Kirk Bond. In connection with that sale, Johnson ordered the abstract of title to be brought to date by the Abstract Company, and in due course the Abstract Company did deliver such an abstract under the usual certification that it covered all items on record affecting title during the period November 19, 1956, to September 1, 1961. Notwithstanding that certificate, the abstract omitted the deed to Thorne dated March 27, 1957. In reliance upon the certificate from the Abstract Company, the Johnsons executed and delivered to the Hamers and Bonds on December 4, 1961, a warranty deed to the entire property, for which those purchasers paid substantial consideration. The Hamers and Bonds allege that they had no knowledge at that time with respect to the Thorne deed, and Johnson disclaims any knowledge that Thorne had recorded his deed.

Thereafter, in 1962, the Bonds for valuable consideration transferred their interest in the property to the Hamers. Still later, on March 4, 1964, the Hamers conveyed the property to Johnson Land and Development Company (hereinafter referred to as "the Land Company"). The Land Company alleges that in connection with this purchase the Hamers delivered for inspection the abstract as certified by the Abstract Company in 1961 and that the Land Company relied upon the abstract so certified in making its purchase.

More than four years after that last conveyance, Thorne instituted this suit on October 31, 1968, against Johnson, the Land Company, and the holders of the two deeds of trust. The petition sought a partition of the real estate, an accounting of profits, and a declaration that the two deeds of trust constituted liens only upon a one-half interest in the property. It is alleged that the filing of this suit by Thorne constituted the first knowledge by any of the other parties that Thorne had recorded a deed showing an interest by him in the land.

The Land Company cross-claimed against Johnson and filed a third-party petition against the Hamers, the Bonds and Vera Johnson, based upon the warranties of title contained in the deeds from those parties. The Johnsons then filed a third-party petition against the Abstract Company based upon the latter's negligent certification of the abstract. The Hamers, the Bonds and the Land Company also cross-claimed against the Abstract Company on the same theory.

In response to those claims against it, the Abstract Company by its answer, raised the defense of the five-year statute of limitations, § 516.120. It then filed a motion against each of the appellants for judgment on the pleadings, based solely on that defense of limitation. The court below sustained those motions and dismissed each cause of action against the Abstract Company with prejudice. The appellants filed separate appeals, but those separate appeals have been consolidated by order of this court.

As noted, the Thorne suit was filed more than five years after the Abstract Company made and delivered its certificate. If the causes of action now alleged against the Abstract Company arose at the time that certificate was delivered, then § 516.120 applies and the claims are barred. On the other hand, appellants allege that they suffered no damage and had no knowledge or reason to seek knowledge of plaintiff's deed (in the case of Johnson, the recording thereof) until the Thorne suit, filed in 1968. If the latter date marks the accrual of the cause of action, then the claims are well within the five-year statutory period and they are not barred by limitation. Hence, the question for determination here resolves itself into the question of when appellants' causes of action did accrue.

There has been much litigation and a large body of case law developed over the years on the issue of when the statute of limitation commences to run against an abstractor for the preparation and certifying of an incorrect abstract of title. The rules which eventually became generally accepted throughout this country and England on this subject can be summarized as follows: The action against the abstractor is based upon the contract of employment, and unless that contract be in writing, the action is governed by the period of limitations applicable to oral contracts. The certification by the abstractor is not an indemnity and, therefore, the cause of action does not arise for the first time when damage is suffered from an adverse claim. Rather, the cause of action arises immediately upon the wrongful breach of contract, which is delivery of the incorrect certificate, and the period of limitations commences on that date. These general rules are set forth in 1 Am.Jur.2d, "Abstracts of Title", § 23 and 24, p. 245; 1 C.J.S. Abstracts of Title § 11, p. 389 and § 13, p. 399; 54 C.J.S. Limitations of Action § 161, p. 110; 118 A.L.R. 215, 218; and 18 A.L.R.3d 978, 1011. Those general rules have been accepted and applied in the past by Missouri Courts: Rankin v. Schaeffer, 4 Mo.App. 108, 1. c. 110–111; Schade v. Gehner, 133 Mo. 252, 34 S.W. 576, 1. c. 578.

If the foregoing general rules are to be applied in this case, then we have reached the end of our inquiry and the judgment of the trial court would clearly have to be sustained. However, we have yet to consider what effect is to be given to an important amendment to the statute of limitations which was adopted by the Missouri Legislature in 1919, subsequent to the decisions in the Rankin and Schade cases. The 1919 amendment is incorporated in what is now § 516.100, the amendment being the emphasized portion of the following quotation:

"Civil actions * * * can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of § 516.100 to 516.370, the cause of action *shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment* * * *" (emphasis added)

There has been no decision by any Missouri court interpreting the effect of the 1919 amendment as it applies to suits against the abstractors. However, the amendment could hardly have been worded more appropriately to evidence an intention to reverse the result which had been reached in the Rankin and Schade cases. In those cases, as well as in the whole line of authority of which they are a part, the courts made it very clear that they were making a deliberate choice between having the period of limitations commence to run from: (1) the date on which the wrongful act (breach of contract) occurred, or (2) the date on which actual damage was suffered by the one who had relied upon the abstract certification. Those decisions clearly state the election in favor of commencement on the date of the technical breach. Thus, the Rankin opinion states:

"The foundation of this action is the implied promise of defendants to perform with care, diligence and sufficient skill

the duty they undertook for the reward agreed upon. This promise was broken by defendants when the certificate of title was delivered, and the statute of limitations then began to run. The action was barred in five years."

The choice was made in even sharper terms in the Schade case where the opinion states:

"This brings us to the next question. When did George Schade's right of action for the negligence accrue? And when did the statute of limitations begin to run against such action? Upon this subject, also, the law seems to be fairly well settled. *In actions on the case for negligence, the cause of action is the breach of duty, and not the consequential damages resulting therefrom;* and the statute begins to run from the time of the breach, and not from the time the consequential damages ensued. Rankin v. Schaeffer, 4 Mo.App. 108; 1 Wood, Lim.Act. p. 456, § 179, and cases cited in note 1; Moore v. Juvenal, 92 Pa.St. 484; Wilcox v. Plummer's Ex'rs, 4 Pet. 172; Bank v. Childs, 6 Cow. 238; Howell v. Young, 5 Barn. & C. 259; Lilly v. Boyd, 72 Ga. 83. The breach of duty in this case took place when the defendant reported to Schade that he had examined the title to the land and that it was all right, and he could safely make and consummate the purchase." (emphasis added)

The conscious election by these decisions in favor of the date of technical breach and against the date of actual damages for the commencement of limitations, is emphasized very sharply by the opinion in State ex rel. Sanborn v. Stonestreet, 92 Mo.App. 214, 1. c. 218, in which the following discussion of the Schade and Rankin opinions appear:

"The authorities on the question of when a cause of action arises so as to set in motion the statute of limitations are not to be reconciled, as can be readily realized from the majority and minority opinions in the cases of Betts v. Norris, 21 Maine 314, and Bank v. Waterman, 26 Conn. 324. In this State we have Schade v. Gehner, 133 Mo. 252 [34 S.W. 576] and Rankin v. Schaeffer, 4 Mo. App. 108, wherein it is held that where an abstractor of titles makes an incorrect or false abstract, the statute begins to run from the time of the delivery of the abstract as that was the breach of duty, notwithstanding it was not then known to be false and that damage did not flow therefrom until afterwards. * * *"

The same point is developed in Purcell v. Land Title Guarantee Co., 94 Mo.App. 5, 67 S.W. 726, 1. c. 728; and in Jackson v. St. Louis-San Francisco Ry. Co., 357 Mo. 998, 211 S.W.2d 931, 1. c. 936. The nature and basis of the decisions in Schade and Rankin were also explained in State ex rel. Fehrenbach v. Logan, 195 Mo.App. 171, 190 S.W. 75, 1. c. 78, where it is pointed out that the Schade and Rankin opinions "merely follow the general rule that a wrongful act causing damage which may be sued for at the time sets the statute in motion, and the same is not postponed because the amount or extent of the damages is not then ascertained or ascertainable."

The 1919 amendment had the effect of disapproving the foregoing choice which had previously been made by the courts. By that amendment to the statute of limitations, the Legislature stated in the plainest of words that the cause of action should no longer be deemed to accrue "when the wrong is done or the technical breach of contract or duty occurs", as had been held in the Rankin and Schade decisions. Nor were the courts thenceforth to continue to ignore the date upon which damages first became "capable of ascertainment" which had been the result of the Rankin and Schade decisions, as clearly stated in the Logan opinion. Instead of the choice previously reached under the judicial decisions the 1919 amendment declares that the opposite choice shall thenceforth be adopted and the cause of action shall be deemed to accrue and limitations

shall commence to run only from the time "when the damage resulting therefrom is sustained and is capable of ascertainment".

The situation here presented appears to be exactly of the type which the Legislature had in mind in adopting the 1919 amendment. To fail to give effect to that amendment here would violate the clear intention by the Legislature to correct an unfair rule which had resulted from the past mechanical application of ancient legal dogma. Furthermore, the giving of such effect to the 1919 amendment will bring Missouri in line with the modern and more enlightened trend of law. See Mumford v. Staton, Whaley & Price, 254 Md. 697, 255 A.2d 359; 63 Harvard Law Review 1177.

In opposition to the above conclusion, the Abstract Company cites and relies upon Allison v. Missouri Power & Light Co., Mo.App., 59 S.W.2d 771, and cases following that decision. The Allison case contains language giving a very narrow and ungenerous interpretation to the 1919 amendment,[1] but that case is distinguishable on its facts from our present situation. The facts in the Allison case were that the plaintiff had suffered an injury which caused broken bones in the nose. However, the resulting severe reactions did not appear until three years after the injury. Suit was not filed until six years after injury. The St. Louis Court of Appeals held that the action was barred by limitations despite the proviso to § 516.100 added by the 1919 amendment. The real basis for the decision is the court's conclusion that the legal injury and resulting damage was all sustained and was capable of ascertainment at the moment that plaintiff was struck in the face and when his nose and the bones thereof were broken, crushed and displaced. The opinion states at l. c. 773, that even though the full extent of the disability might not then have been known, still the items of damages pleaded in order to avoid the bar of limitations "were after all but aggravating circumstances enhancing the legal injury already inflicted, and constituting mere developments of such injury."

It is in light of the above factual context and ultimate ruling that we must appraise the following language which also appears in the Allison opinion:

"In other words, the statute recognizes the doctrine that, when an injury is complete as a legal injury at the time of the act, the period of limitation will at once commence; that, if the action is of a nature to be maintained without proof of actual damage, the period of limitation will begin to run from the time the act is done without regard to any actual damage * * *."

The language last quoted was unnecessary to the opinion and should be considered as dictum. While the above language from the Allison opinion has been quoted with seeming approval by the Missouri Supreme Court in three cases, in none of them was that language necessary to the result reached. Rippe v. Sutter, 292 S.W.2d 86, 90; Gruenewaelder v. Wintermann, Mo., 360 S.W.2d 678, 690; Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank, 411 S.W.2d 159, l. c. 163–165. In fact, in the case last mentioned the Supreme Court en banc softens the effect of the Allison doctrine by going to considerable length to demonstrate that the plaintiff in that case could have discovered the operative facts within the period of limitations by an exercise of due diligence, and that the jury had so found.

The dictum of the Allison case should not be expanded, and instead the ruling of that case should be confined to the specific factual situation there presented.

---

1. For a criticism of the Allison case, see "Tort Liability and the Statute of Limitation", 33 Missouri Law Review 171, l. c. 192.

The Abstract Company also argues that damages should be deemed to have resulted to the Johnsons, Hamers, and Bonds in December, 1961, (when the Hamers and the Bonds paid their consideration to the Johnsons), and that damage resulted to the Land Company in 1964 (when that subsequent purchaser paid its consideration to the Hamers). No authority is cited by the Abstract Company for this interpretation, and our independent research discloses none. On principle, the argument is fallacious. The law is uniform to the effect that the only cause of action here is one upon the contract of employment between Johnson and the Abstract Company. In addition to the Rankin and Schade cases so holding, see also the much more recent case of Slate v. Boone County Abstract Company, Mo.Sup., 432 S.W.2d 305.[2] Accordingly, the only consideration which is significant for present purposes is that which was paid by Johnson to the Abstract Company by way of abstracting fee. As of December, 1961, that expenditure was the only damage so far suffered by Johnson. To say that a cause of action arose at that point for purposes of the statute of limitations is to return to the ancient rule which held that the cause of action accrued upon the date of the technical breach—the very result which was intended to be changed by the 1919 amendment to the Missouri Statute of Limitations.

The Abstract Company further argues that "there was nothing to prevent any of the Appellants from discovering the warranty deed to Plaintiff, which had been on record in the Office of the Recorder of Deeds in Livingston County since April 4, 1957", and that therefore all the operative facts were discoverable by the appellants for a period of time longer than five years. It is true that the whole world, including appellants, are bound to constructive knowledge of documents which have been duly recorded. That, of course, is the very reason why abstract companies are in business. That is the reason why Johnson ordered an abstract for the benefit of the Hamers and the Bonds, and it is the reason why those purchasers would insist upon an abstract currently certified before they would buy the property. These parties performed their duty with respect to examining the public record when they hired a professional abstractor to examine all documents on file and to make a report. It would be absurd to lay down as a legal requirement that these parties, in addition to hiring a professional abstractor, should also have to make their own independent laymen's investigation to ascertain whether their professional agent had done its job properly.

The relationship between Johnson and Thorne, according to the allegations by which we are presently bound[3], were unusual. It may well be that there were some facts which should have put at least Johnson on notice at some early date that Thorne had placed his deed of record. Such facts, if they exist, can be developed upon trial. However, we cannot say that the status of the Thorne deed was "discoverable" simply by reason of it having been recorded in 1957.

The judgment of the court below is reversed and the cause is remanded.

All concur.

2. Anderson v. Boone County Abstract Co., Mo.Sup., 418 S.W.2d 123, l. c. 129, assumes without deciding that a cause of action may lie on the theory of misrepresentation. However, both that case and the Slate opinion would seem to deny any right of action by the Land Company against the Abstract Company. In view of the state of the pleadings and the nature of this appeal, we need not and do not rule on that point.

3. The pleadings are amendable to allege specifically the claimed oral agreement by Thorne not to record his deed.